MEGAN MAJOUE        *     NO. 2023-CA-0549

VERSUS        *

       **COURT OF APPEAL**

CODY FISH, LAMARQUE    *

FORD, INC., ERIC PAUL       **FOURTH CIRCUIT**

MALLET, STATE FARM     *

MUTUAL AUTOMOBILE      **STATE OF LOUISIANA**

INSURANCE COMPANY,    * * * * * * *

TROY LAWSON, JOBBERS

OIL TRANSPORT COMPANY,

INC., GUIDEONE MUTUAL

INSURANCE COMPANY,

KENDRA SHAWN, ALLSTATE

INSURANCE COMPANY, ET

AL.

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-04440, DIVISION "E"
Honorable Omar Mason, Judge
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase, Judge Karen K. Herman)

Jake J. Weinstock
Irvy Ernest Cosse, III
COSSE LAW FIRM, LLC
1515 Poydras Street, Suite 1825
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLANT

Ira Jay Rosenzweig
COMEAUX & GRACE
3900 N. Causeway Blvd., Suite 1060
New Orleans, LA 70002

      COUNSEL FOR DEFENDANT/APPELLEE

                  **REVERSED IN PART;**
                  **AFFIRMED IN PART;**
                  **REMANDED FOR**
             **FURTHER PROCEEDINGS**
                  **MARCH 8, 2024**

Appellant/Plaintiff, Megan Majoue (hereinafter "Mrs. Majoue") seeks review of the trial court's March 1, 2023 judgment granting a motion for summary judgment filed by Appellee/Defendant, Lamarque Ford, Inc. (hereinafter "Lamarque Ford"). After consideration of the record before this Court and applicable law, we reverse in part and affirm in part the trial court's judgment and remand the matter to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

This appeal arises from a car accident that occurred on June 13, 2019 (hereinafter "the June 2019 accident"). One year later, Mrs. Majoue filed a petition for damages alleging that she was a passenger in an Uber traveling on I-10 west when a vehicle driven by Defendant, Cody Fish (hereinafter "Mr. Fish"), negligently initiated a multi-vehicle collision. Mrs. Majoue's petition named twelve defendants, including Lamarque Ford. In her original petition, Mrs. Majoue's assertion of liability against Lamarque Ford was based on Lamarque Ford's ownership of a 2019 Ford Escape, the vehicle Mr. Fish was driving at the time of the June 2019 accident.

Lamarque Ford filed a motion for summary judgment maintaining that Mrs. Majoue's petition fails to assert a viable claim of negligence. Lamarque Ford contends that it cannot be held liable for Mr. Fish's negligent driving solely based on its ownership of the 2019 Ford Escape.

Prior to the hearing on the motion for summary judgment, Mrs. Majoue amended her petition. The amendments allege Mr. Fish was acting in the course and scope of his employment with Lamarque Ford at the time of the accident and Lamarque Ford negligently entrusted the 2019 Ford Escape to him. Specifically, Mrs. Majoue alleged: (1) Lamarque Ford was, at all times, vicariously liable for Mr. Fish's actions; and (2) Lamarque Ford was negligent in supervising, hiring, training, instructing, and entrusting Mr. Fish with the 2019 Ford Escape.

Lamarque Ford amended its motion for summary judgment, admitting that Mr. Fish was an employee at the time of the accident but denied the allegations that Mr. Fish was acting in the course and scope of his employment.[1] Lamarque Ford acknowledged that it loaned the 2019 Ford Escape to Mr. Fish, pursuant to a "Rental Agreement," but re-urged that it is not liable for Mr. Fish's actions.[2] Lamarque Ford's motion for summary judgment listed the following pertinent uncontested material facts: Mr. Fish was not in the course and scope of his employment when the accident occurred; Lamarque Ford loaned Mr. Fish a vehicle

---

[1] Mr. Fish is employed by Lamarque Ford as a service technician.

[2] The Rental Agreement provides in pertinent part:

> This is a contract for rental of the Vehicle offered to you. Your signature on the Face Page is acceptance of this offer and acknowledgement that binding consideration exists, as follows: our opportunity to service or repair a vehicle you left with us; financial benefits we receive from others for the service/repair work; financial benefits we receive from others to obtain and use this Vehicle as a Service Replacement Vehicle; a fee you pay us; and/or the rights and obligations of this Agreement. . . . .

2

because his personal vehicle was rendered a complete loss as a result of a previous accident in which he was not at fault; Lamarque Ford loaned Mr. Fish a vehicle in accordance with its general policy of loaning vehicles; and Lamarque Ford had no reason to suspect Mr. Fish was an incompetent driver at the time it loaned him the 2019 Ford Escape. In support of these assertions, Lamarque Ford attached the depositions of Mr. Fish and Mrs. Majoue; the affidavit of John Doré (hereinafter "Mr. Doré"), Mr. Fish's supervisor at Lamarque Ford; and the "Rental Agreement."

Mrs. Majoue opposed the amended motion for summary judgment arguing that genuine issues of material fact remain.[3] According to Mrs. Majoue, Lamarque Ford is vicariously liable for Mr. Fish's negligence as he was acting in the course and scope of his employment. She maintained that Lamarque Ford supplied Mr. Fish with a vehicle to travel "to and from" work therefore creating a jurisprudential exception to the "going-and-coming rule."[4] She also asserted that Lamarque Ford was negligent in entrusting Mr. Fish with one of its vehicles when it should have been aware that he was previously issued traffic citations and had a conviction for driving under the influence.[5] In support of these assertions, Mrs. Majoue attached the following to her opposition: two separate depositions of Mr. Dore; amended petitions; and Mr. Fish's deposition.

---

[3]Another named defendant, United Financial Casualty Company (hereinafter "United Financial"), the insurer of the Uber in which Mrs. Majoue was a passenger, filed an opposition to Lamarque Ford's amended motion for summary judgment. Mrs. Majoue filed a two page opposition adopting United Financials' opposition in its entirety. For purposes of this appeal, we will refer to United Financials' arguments as those advanced by Mrs. Majoue.

[4] This jurisprudential rule will be discussed fully throughout this opinion.

[5] These traffic citations were issued to Mr. Fish between the years 1999 to 2001.

After a hearing on Lamarque Ford's motion for summary judgment, the trial court found that Mr. Fish was not acting in the course and scope of his employment at the time of the accident and Lamarque Ford was not negligent in entrusting the vehicle to Mr. Fish. The trial court granted Lamarque Ford's motion for summary judgment, dismissing all claims against Lamarque Ford. This devolutive appeal followed.

## STANDARD OF REVIEW

This Court reviews the trial court's denial or grant of a motion for summary judgment *de novo*. *Reddick v. State*, 2021-0197, p. 5 (La.App. 4 Cir. 9/29/21), 328 So.3d 504, 507. The applicable standard of review is as follows:

> Appellate courts review the grant or denial of a motion for summary judgment *de novo,* using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiff[']s cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.

*Chatelin v. Fluor Daniel Const. Co*, 2014-1313, p. 3 (La.App. 4 Cir. 11/10/15), 179 So.3d 791, 793 (citation omitted); *See also Couvillon v. Univ. Med. Ctr. Mgmt. Corp.*, 2023-0076, p. 5 (La.App. 4 Cir. 11/2/23), --So.3d--, 2023 WL 7212779, *2, *writ denied*, 2023-01671 (La. 2/14/24) (citing La. C.C.P. art. 966(A)(3)).

## Summary Judgment

Summary judgment is "designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). "The granting of summary judgment is contingent upon the pleadings, depositions, answers to discovery, admissions on file and affidavits demonstrating that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law." *Reddick*, 2021-0197, p. 6, 328 So.3d at 508 (citation omitted). Genuine issues are ones in which reasonable persons could disagree. *Id*. "[I]f reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. *Id*. "A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id*. (citations omitted).

The mover, on a motion for summary judgment, bears the burden of proof; however, if the mover will not bear the burden of proof at trial then the mover is not required to negate all elements of the adverse party's claims. La. C.C.P. art. 966(D)(1). Therefore, La. C.C.P. art. 966,

> first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.

*Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078, p. 4 (La. 6/30/00), 764 So.2d 37, 39 (citation omitted). Summary judgment shall be rendered against the adverse

5

party if the adverse party fails to set forth facts demonstrating a genuine issue of material fact. La. C.C.P. art. 967(B). With these principles in mind we turn to Mrs. Majoue's assignment of error.

## DISCUSSION

In Mrs. Majoue's sole assignment of error, she maintains the trial court erred in granting summary judgment in favor of Lamarque Ford when genuine issues of material fact remain as to (1) whether Mr. Fish was acting in the course and scope of his employment when the accident occurred and (2) whether Lamarque Ford negligently entrusted a vehicle to Mr. Fish. We address each issue separately.

### Vicarious Liability

On appeal, Mrs. Majoue contends that Mr. Fish was acting in the course and scope of his employment with Lamarque Ford when the June 2019 accident occurred. She asserts that Lamarque Ford loaned a vehicle to Mr. Fish for the sole purpose of traveling to and from work, therefore creating genuine issues of material fact as to whether Lamarque Ford is vicariously liable for Mr. Fish's actions.

Vicarious liability is codified in La. C.C. art. 2320 which provides, in pertinent part, that "[m]asters and employers are answerable for the damages occasioned by their servants and overseers, in the exercise of the functions in which they are employed." "An employer is answerable for its employee's negligent acts 'when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business.'" *Johnson v. Transit Mgmt. of Se. Louisiana, Inc.*, 2017-0793, p. 8 (La.App. 4 Cir. 2/28/18), 239 So.3d 973, 979 (quoting *Orgeron on Behalf of Orgeron v. McDonald*, 1993-1353, p. 4 (La.

6

7/5/94), 639 So.2d 224, 227 (citation omitted)). The determination of the course and scope of one's employment is fact specific and must be considered on a case-by-case basis. *Johnson*, 2017-0793, p. 8, 239 So.3d at 979 (citation omitted). When determining if an employee's conduct is "employment-rooted," our Supreme Court has set forth the following relevant factors to be considered:

> the payment of wages by the employer; the employer's power of control; the employee's duty to perform the particular act; the time, place, and purpose of the act in relation to service of the employer; the relationship between the employee's act and the employer's business; the benefits received by the employer from the act; and the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act.

*Oregon*, 1993-1353, pp. 4-5, 639 So.2d at 227 (citation omitted).

"Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Id.*, 1993-1353, p. 4, 639 So.2d at 226 (citation omitted). The facts of the case *sub judice* seek to apply the principle that an employee traveling from home to work or returning from work to home is generally not in the course and scope of his employment. *See Id.*, 1993-1353, p. 5, 639 So.2d at 227. The trial court determined that Mr. Fish was not in the course and scope of his employment when the June 2019 accident occurred as he was traveling to his workplace. The facts presented suggest genuine issues of material fact exist as to whether Mr. Fish's conduct was "employment-rooted." Without conclusively answering the latter question, we cannot determine the issue of whether Mr. Fish was in the course and scope of his employment when the accident occurred.

Mr. Fish is an employee of Lamarque Ford and was driving the 2019 Ford Escape, owned by Lamarque Ford, at the time of the June 2019 Accident. Mr. Fish was loaned a vehicle by Lamarque Ford because of a recent accident which resulted in the total loss of his personal vehicle. Following the accident, Lamarque Ford instructed him to tow his personal vehicle to its service facility. The "Rental Agreement," signed by Mr. Fish, indicates that the 2019 Ford Escape was given to him while Lamarque Ford serviced his vehicle. However, Mr. Fish's deposition testimony is clear that he was aware his personal vehicle was rendered a total loss soon after the accident. Mr. Dore's depositions also confirms Lamarque Ford's knowledge that Mr. Fish's vehicle was a total loss shortly after the vehicle's arrival at its service facility. Mr. Fish also admitted that Lamarque Ford provided him with the 2019 Ford Escape for the sole purpose of traveling to and from work and he was allowed to drive the vehicle for one and a half months after it was determined his vehicle was totaled. Considering the conflicting facts presented, the relevant factors in determining Lamarque Ford's interest, duty, and control in loaning a vehicle to Mr. Fish cannot be assessed by this Court. *See Oregon*, 1993-1353, pp. 4-5, 639 So.2d at 227 (citation omitted). Thus, whether or not Mr. Fish's conduct was "employment-rooted" at the time of the accident is an issue of fact.

We find genuine issues of material fact exist as to Lamarque Ford's vicarious liability. Under the unique facts presented, whether Mr. Fish's conduct was "employment-rooted" prevents this Court from concluding that Mr. Fish was in the course and scope his employment when the June 2019 accident occurred. Accordingly, we find the trial court erred in granting summary judgment on the issue of vicarious liability.

***Negligent Entrustment***

Mrs. Majoue also contends that Lamarque Ford negligently entrusted a vehicle to Mr. Fish. She asserts that genuine issues of material fact remain as to Mr. Fish's competence as a driver. Under the theory of negligent entrustment, the lender of a vehicle is not responsible for the negligence of a borrower unless he or she had knowledge the borrower was physically or mentally incompetent to drive. *Cosey on Behalf of Hilliard v. Flight Acad. of New Orleans, LLC*, 2019-0785, pp. 19-20 (La.App. 4 Cir. 11/12/20), 365 So.3d 76, 89 (citation omitted). "[O]ne who entrusts an automobile to an intoxicated, or otherwise incompetent, driver is responsible for the harm resulting from the incompetent operation of the vehicle." *Id.*, 2019-0785, p. 20, 365 So.3d at 89 (quoting *Thistlethwaite v. Gonzalez*, 2012-0130, p. 27 (La.App. 5 Cir. 12/18/12), 106 So.3d 238, 257.). When a lender knows or should have known that the "borrower is likely to use the car in a manner involving an unreasonable risk of physical harm, because of the borrower's youth, inexperience, intoxication, incompetence, or otherwise" --- the lender "can be held liable to a third party for damage caused by the borrower." *Cosey*, 2019-0785, p. 20, 365 So.3d at 89 (citation omitted). "[T]he prevailing concept of negligent entrustment is that, in order 'to prove a claim of negligent entrustment, a plaintiff must show that a lessor had actual or constructive knowledge that the lessee was incompetent or had an apparent disability at the time of the lease.' " *Id.* (quoting *Cenance v. Tassin*, 2003-1379, p. 6 (La.App. 4 Cir. 3/3/04), 869 So.2d 913, 917.).

Lamarque Ford's motion for summary judgment asserts that it followed proper policy and procedure when loaning Mr. Fish a vehicle. Mr. Dore's deposition explains Lamarque Ford's process for loaning vehicles. Lamarque Ford checks a driver's license to determine if it contains restrictions and ensures the

driver has insurance. Mr. Dore stated that Mr. Fish had proper insurance and his license had no restrictions. Although Mrs. Majoue attempts to submit Mr. Fish's prior traffic infractions as evidence that Lamarque Ford was negligent in entrusting him with a vehicle, we find that evidence too remote. The burden of checking traffic citations from more than twenty years ago is too onerous of a burden to place on a lessor. Mr. Fish works as a service technician. His driving history has no bearing on his job duties. Thus, there are no genuine issues of material fact relative to Mrs. Majoue's claim of negligent entrustment. Accordingly, the trial court did not err in granting summary judgment on the issue of negligent entrustment.

## CONCLUSION

We find genuine issues of material fact exist relative to the issue of whether Mr. Fish was in the course and scope of his employment with Lamarque Ford at the time of the June 2019 accident. The depositions of Mr. Fish and Lamarque Ford's corporate representative, Mr. Dore, coupled with the "Rental Agreement" provide contradicting facts as to whether Lamarque Ford provided Mr. Fish with a vehicle for the sole purpose of traveling "to and from work." Such facts indicate that material issues preclude the granting of summary judgment on the issue of vicarious liability. We therefore reverse the portion of the trial court's March 1, 2023 judgment granting Lamarque Ford's summary judgment on the issue of vicarious liability.

However, our *de novo* review of the record indicates no genuine issues of material fact exist as to whether Lamarque Ford negligently entrusted Mr. Fish with the 2019 Ford Escape. We therefore find the trial court properly granted summary judgment in favor of Lamarque Ford relative to Mrs. Majoue's claims of

negligent entrustment. Accordingly, we affirm the portion of the trial court's judgment granting Lamarque Ford's motion for summary judgment on the claims of negligent entrustment.

## DECREE

Based on the foregoing, we reverse in part and affirm in part the trial court's March 1, 2023 judgment and remand the matter to the trial court for further proceedings.

**REVERSED IN PART;**
**AFFIRMED IN PART;**
**REMANDED FOR**
**FURTHER PROCEEDINGS**

11